IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMMY L. GOSHORN, | : | Civil Action No. 1:12-cv-0517 |
| Plaintiff | : | |
| v. | : | |
| WESTFIELD INSURANCE CO., | : | The Honorable Sylvia H. Rambo |
| Defendant | : | |

# **M E M O R A N D U M**

Before the court is Defendant Westfield Insurance Company's ("Westfield") Motion to Dismiss Count II (Doc. 2) of the complaint. For the reasons that follow, the motion will be denied.

## I. **Background**

### A. **Facts**

This case arises out of a car accident that occurred on October 1, 2009, in York County, Pennsylvania, between Plaintiff Tammy Goshorn and an individual named Eric Meisenhelder. (Compl. ¶¶ 5, 6.) Meisenhelder was insured by a policy with liability limits of $100,000. Plaintiff's case against Meisenhelder settled for $97,000 — an amount sufficiently covered by the policy limits, but insufficient to wholly cover Plaintiff's alleged injuries making her claim one against an underinsured motorist. (*Id.* ¶ 6.)

Plaintiff claims that as a result of this accident she sustained the following injuries: "Aggravation to Plaintiff's lumbar spine requiring surgical

intervention in the form of a lumbar fusion at L5-S1 with instrumentation and bone grafting with laminectomy at L5 and partial laminectomy at S1."[1]  (*Id.* ¶ 8.)  As a result of the accident and subsequent injuries, Plaintiff claims she now suffers from the following: "[] extreme pain, inconvenience, and mental anguish"; "permanent scarring"; "[] general health, strength, and vitality [impairment]"; "future medical treatment"; and other general losses.  (*Id.* ¶ 9.)

At the time of the accident, Plaintiff was insured by Westfield under policy number WNP4466460, which provided underinsured motorist benefits up to $300,000.  (*Id.* ¶ 11.)  This policy was stacked on three motor vehicles, for a total policy payout maximum of $900,000.  (*Id.*)

On March 25, 2011, Plaintiff sent to Westfield the police report from the accident as well as all relevant medical documents.  (*Id.* ¶ 15.)  On April 21, 2011, Plaintiff's counsel contacted James Erickson, the assigned claims adjuster from Westfield, and inquired about the status of Plaintiff's underinsured motorist ("UIM") claim.  (*Id.* ¶ 16.)  The complaint alleges that Erickson replied that Plaintiff's claim was "on the pile" but had not yet been evaluated.  (*Id.*)

On June 1, 2011, Westfield granted consent to Plaintiff to settle the third-party claim with Meisenhelder as it appeared Meisenhelder had no attachable assets.  (*Id.* ¶ 17 & Ex. B.)  Having heard nothing about her own claim with Westfield, Plaintiff's counsel called Erickson on June 17, 2011, and July 7, 2011.  (*Id.* ¶ 18.)  Plaintiff's counsel left telephone messages but received no response.  (*Id.*)

---

[1] A laminectomy is a surgery involving removal of the back part of the vertebrae, known as the "lamina."  This surgery is performed to remove pressure on the spine which can be caused by, *inter alia*, bony growths in the spinal canal or a herniated disk.  *See* Mayo Clinic, Laminectomy, http://www.mayoclinic.com/health/laminectomy/MY00674 (last visited May 4, 2012).

On August 5, 2011, and September 6, 2011, Plaintiff's counsel wrote letters to Westfield, but again, received no response. (*Id.* ¶ 18.) Plaintiff's counsel once again tried calling Erickson on September 16, 2011, and twice on September 23, 2011. (*Id.* ¶ 19.) During the second call, Plaintiff's counsel left a message asking Erickson to return the calls so that Erickson's supervisor would not have to be contacted. (*Id.*) Later on September 23, 2011, Erickson left a message with Plaintiff's counsel explaining that he would be sending Plaintiff's MRI films to a medical expert for review. (*Id.* ¶ 20.) Subsequently, on October 20, 2011, Plaintiff's counsel wrote to Erickson asking for an update on the status of Plaintiff's claim. (*Id.* ¶ 21.) On October 25, 2011, Westfield, through Erickson, sent a letter to Plaintiff's counsel indicating they were effectively denying the claim. (*Id.* ¶ 22.) Westfield based its decision on a report from Michael L. Brooks, who holds both a medical and a law degree, who had examined Plaintiff's MRI films and determined that Plaintiff had not suffered any injury related to the October 1, 2009 automobile accident. (*Id.*) On November 9, 2011, Plaintiff's counsel wrote to Westfield expressing surprise and dismay that the claim had been denied; Westfield never responded to this letter. (*Id.* ¶ 23.) Therefore, Plaintiff alleges Westfield has breached its contractual obligations to Plaintiff and has acted in bad faith pursuant to 42 Pa. Cons. Stat. § 8371.

### B. Procedural History

This case was originally filed in the York County Court of Common Pleas, but was removed to this court by Defendant on March 21, 2012. (Doc. 1.) On March 28, 2012, Defendant filed the instant motion to dismiss count two of the complaint, and brief in support. (Docs. 2, 3.) Plaintiff filed a brief in opposition on

April 11, 2012, (Doc. 5), to which Defendant responded on April 25, 2012, (Doc. 7). Therefore, the motion is now ripe for disposition.

## II.    Discussion

Based on the facts alleged above, Plaintiff bring claims for breach of contract and bad faith under 42 Pa. Cons. Stat. § 8371.  Defendant at this stage has only moved to dismiss the claim for bad faith.   For the reasons that follow, the motion will be denied.

In Pennsylvania, bad faith claims against insurance companies are governed by Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. § 8371, which reads,

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.  To establish a bad faith claim, a plaintiff must show: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy, and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Lockhart v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 597476, at *6 (W.D. Pa. Feb. 16, 2010).  While the cases usually speak in terms of the denial of benefits, "[f]ailure to conduct a reasonable investigation based on available information may" also support a claim of bad faith on the part of an insurance

company.  *Giangreco v. U.S. Life Ins. Co.*, 168 F. Supp. 2d 417, 423 (E.D. Pa. 2001).

Although not explicitly defined in Pennsylvania, "bad faith" has been interpreted to mean "frivolous or unfounded refusal to pay proceeds of a policy which imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."  *Lockhart*, 2010 WL 597476, at *6 (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994) (internal quotations omitted)).  Intuitively, insurance companies must investigate claims in a reasonable manner.  *Id.*  Furthermore,

> [t]o defeat a bad faith claim, the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusions.  Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.

*Id.* (quoting *Mann v. UNUM Life Ins. Co. of Am.*, 2003 WL 22917545, at *6 (E.D. Pa. Nov, 23, 2003).

In addition, there is a heightened burden of proof in bad faith claims, and a plaintiff must demonstrate by clear and convincing evidence that an insurer acted in bad fath.  "The clear and convincing standard requires evidence of bad faith so clear, direct, weighty and convincing so as to enable the factfinder to make its decision with clear conviction."  *Lockhart*, 2010 WL 597476, at *6 (quoting *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 752 (3d Cir. 1994) (internal citations omitted).  Thus, a plaintiff's burden is quite high.  *Id.*

At this early stage in the litigation, the court finds that Plaintiff has properly pled a claim for bad faith.  Plaintiff claims that Westfield has frivolously and unfoundedly failed to pay proceeds rightfully owed to Plaintiff under policy number WNP4466460.  Furthermore, Plaintiff claims that this was done because Westfield has not conducted a proper investigation into Plaintiff's medical claims and instead relied solely on the opinion of one medical/legal expert who only reviewed Plaintiff's MRI films and did not review any other relevant medical documentation.  Although the court makes no determination as to the ultimate viability of Plaintiff's bad faith claim, the court does note that Plaintiff's burden moving forward is quite high and a claim for bad faith cannot be based on "negligence or bad judgment" on the part of Westfield's agents.  However, in light of the standard applicable to motions to dismiss, the court will allow this claim to proceed.

**III.**     **Conclusion**

For the reasons set forth above, Defendant's motion to dismiss count two of the complaint will be denied.  An appropriate or will issue.

                                                       s/Sylvia H. Rambo                    
                                                       United States District Judge

Dated: May 4, 2012.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAMMY L. GOSHORN,** | Civil Action No. 1:12-cv-0517 |
| **Plaintiff** | |
| v. | |
| **WESTFIELD INSURANCE CO.,** | The Honorable Sylvia H. Rambo |
| **Defendant** | |

## O R D E R

For the reasons set forth in the accompanying memorandum of law, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss count II (Doc. 2) is **DENIED**.

                                                    s/Sylvia H. Rambo
                                                    United States District Judge

Dated: May 4, 2012.